USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DANY KOGAN,
                    Petitioner,

      - against -

UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------------------------------x

13 Cr. 171(PAC)
17 Civ. 4965(PAC)

**OPINION AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner Dany Kogan ("Kogan") instituted this 28 U.S.C. § 2255 petition to vacate and set aside his conviction and sentence on one count of theft of federal funds in violation of 18 U.S.C. § 641, and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. The petition is procedurally barred, and must be **DISMISSED**.

## BACKGROUND

Kogan was indicted for his involvement in a scheme to defraud the U.S. Treasury Department (the "Treasury"). *See* ECF 53[1] ("Government's Sentencing Submission") at 2–3. The scheme involved misappropriating identities of Puerto Rican residents, filing false tax returns in their names, intercepting tax refund checks, and cashing the intercepted checks. Kogan was accused of cashing 135 fraudulent checks, with the face value in excess of $970,000. *Id.* The Government charged Kogan with: (1) one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 286 (Count One); (2) one count of theft of federal funds in violation of 18 U.S.C. § 641 (Count Two); and (3) one count of aggravated identity theft in violation of 18 U.S.C. § 1028A, during and in relation to the charged theft of federal funds (Count Three). ECF 29 ("Superseding Indictment").

---

[1] Unless noted otherwise, all ECF entries refer to those docketed under Case No. 13 Cr. 171.

1

Initially, Kogan denied any wrongdoing. But as the impending trial before U.S. District Judge Scheindlin drew closer, Kogan's resolve weakened. On August 14, 2013, after the jury selection, Kogan withdrew his plea of not guilty and offered to plead guilty to each of the three counts. *See* ECF 38, 40 ("Plea Hr'g Tr.") at 3:11–14, 61:20–21. His guilty plea was circuitous and inconsistent, however, *see id.* at 23:3–24:25; and the allocution was "wildly at odds with the facts the Government [had expected] to prove at trial in very material respects," *id.* at 36:15–17. After numerous failed attempts at eliciting an acceptable guilty plea, Judge Scheindlin adjourned the plea hearing. *See id.* 38:8–11. Judge Scheindlin noted that the guilty plea to Count One could not be accepted because Count One required a showing of an agreement which Kogan was unwilling to admit. *See id.* at 27:23–28:4; 37:12–13; 38:11–12; 38:20–39:1. Judge Scheindlin expressed that Kogan's allocution to Counts Two and Three might nonetheless be satisfactory. *See id.* at 38:21–24.

The plea hearing resumed the next day. The Government agreed to dismiss Count One as long as the guilty plea to Counts Two and Three was "accepted and the sentence was at hand." *Id.* at 45:24–46:1. Kogan then proceeded to allocute to Counts Two[2] and Three[3].

---

[2] From at least in or about March 2012, up to and including in or about January 2013, in the Southern District of New York and elsewhere, DANY KOGAN. the defendant, willfully and knowingly did embezzle, steal, purloin, and convert to his own use and the use of another, and without authority, did sell, convey, and dispose of a record, voucher, money, and thing of value of the United States and a department and agency thereof, to wit, the Internal Revenue Service, of the Department of Treasury, which exceeded $1,000, and did receive, conceal, and retain the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined, and converted, to wit, KOGAN converted to his own use fraudulently obtained tax refund checks issued by the United States Treasury. Superseding Indictment at 2–3.

[3] From at least in or about March 2012, up to and including in or about January 2013, in the Southern District of New York and elsewhere, DANY KOGAN, the defendant, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, the violation charged in Count Two of this Indictment, willfully and knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, DANY KOGAN possessed and used without lawful authority the names, dates of birth, and Social Security numbers ("SSNs") of other persons. *Id.* at 3.

## FACTS SUPPORTING PLEA TO COUNTS TWO AND THREE

In the spring of 2012, Kogan received tax refund checks from his customers in exchange for merchandise sold at his eyeglass store in Bayshore, New York, knowing that it "was unusual." Plea Hr'g Tr. at 49:2–19. He deposited these checks into his bank account at Chase, which initially accepted and paid the checks, but later debited him and advised that the checks were fraudulent. *Id.* at 49:15–22.

Undeterred, he attempted to cash the checks at Bank of America. *Id.* at 49:25–50:2. To evade the fact that these checks designate third parties as the payee, he physically altered about 30-to-40 checks to name himself the "payee." *Id.* at 50:2–52:11. Bank of America refused to accept the checks because the checks were fraudulent. *Id.* at 52:22–24. Kogan called the Treasury to inquire about the checks, and the Treasury told him that the checks had already been paid to Bank of America. *Id.* at 53:8–10. Bank of America, however, never paid the money. *Id.* at 53:12–24.

He moved his business to TD bank. He deposited four more checks there, but, again, TD Bank bounced them, even though the Treasury told him that it had paid the checks to TD Bank. *Id.* at 54:4–11. In order to induce TD Bank to credit a deposited check, Kogan sent the bank a hold harmless letter, ostensibly sent by the payee named on the deposited check, stating that TD Bank would not be held liable if it credited the check to a party other than the named payee. The hold harmless letter included copies of the social security card and the driver's license of the customer that presented the check to him. *Id.* at 21:25–22:23; 23:3–24:25; 34:9–18; 54:19–56:1. This hold harmless letter, however, was a top-to-bottom forgery by Kogan. Kogan forged both the payee's signature endorsing the letter, *id.* at 55:5–55:14, and the notary seal that purported to endorse the signature, *id.* at 54:23–55:4.

3

During his allocution, he admitted that he had attempted to cash Treasury checks that later turned out to be fraudulent. But he steadfastly resisted admitting that he had known the checks to be fraudulent at the time he deposited the checks. *Id.* at 20:4–15; 25:11–26:11; 49:23–25; 61:4–15. Judge Scheindlin was skeptical that Kogan could allocute to the requisite knowledge. *See id.* at 61:23–24 ("He clearly says he didn't know that they were fraudulent."). Under questioning by his counsel, however, Kogan eventually did successfully allocute to it:

> MR. AGNIFILO: But even after you thought you were -- you thought you were being scammed, but at some point you knew these checks were bogus, false checks, and you believed that to be true, correct?
> THE DEFENDANT: Yes.
> MR. AGNIFILO: Even after you believed that to be true, you kept putting these checks in the bank, correct?
> THE DEFENDANT: Yes.
> MR. AGNIFILO: You didn't stop, right?
> THE DEFENDANT: Yes.

*Id.* at 72:25–73:17. *See also id.* at 75:23–76:1 ("THE COURT: And you did that at the time when you had reason to believe these checks were fraudulently obtained, right?; THE DEFENDANT: In some -- yes. Yes."); *id.* at 74:4–5 ("I did deposit [the check] knowing that it was fraudulent."). Judge Scheindlin accepted the guilty plea to Counts Two and Three.

On April 29, 2014, Kogan was sentenced to three years of imprisonment and two years of supervised release. ECF 55. Judgment was entered on April 30, 2014. Kogan did not appeal, and his judgment of conviction became final on or about May 13, 2014. Kogan completed his term of imprisonment on or about April 26, 2016, and is currently serving his term of supervised release. ECF 66 ("Opp'n Mem.") at 9. On June 30, 2017, Kogan filed the instant petition under Section 2255 seeking vacatur of his conviction.

## LEGAL STANDARD

28 U.S.C. § 2255(a) provides, in relevant part, that a prisoner, *in custody*:

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A petition for relief under § 2255 faces a heavy burden: "a collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotations omitted).

A section 2255 petition is subject to a one-year statute of limitations that runs from the day the judgment of conviction becomes final. 28 U.S.C. § 2255(f). The petition is also subject to a procedural requirement that it may not raise a claim that has not been raised on direct appeal. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). Even if the petition is procedurally defaulted, however, it may still be considered on the merits if "the petitioner establishes ... 'actual innocence.'" *Zhang*, 506 F.3d at 166 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). An allegation of actual innocence affords "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Delo*, 513 U.S. 298, 315 (1995). The actual innocence exception is, however, "demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quotation marks omitted). And the petitioner bears the burden of satisfying the "demanding" standard for actual innocence. *Id.*

## DISCUSSION

Kogan's habeas petition is procedurally defaulted. Kogan did not file any direct appeal; and his judgment of conviction became final almost 4 years ago. ECF 64 ("Mem.") at 7. He nonetheless seeks to have his petition considered through an actual innocence "gateway." *Id.* That gateway is not available because Kogan has failed to establish that he is actually innocent.

Kogan claims he is actually innocent because his guilty plea, which Judge Scheindlin erroneously accepted, was deficient. His plea supposedly failed to establish the requisite *mens rea* of the charged crimes. *See* Mem. at 8–12. The argument is fanciful. Judge Scheindlin accepted the plea only after a thorough and meticulous examination and complete review of all elements of Counts Two and Three.

Even if there were a deficiency in the guilty plea (which there is not), it would be immaterial. Legal insufficiency of his conviction, which is effectively what Kogan attempts to prove, does not establish actual innocence. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. And factual innocence requires a showing that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [him]." *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000).

When viewed "in light of all the evidence," the weight of the evidence is against Kogan. *Id.* His actual innocence claim is predicated on the supposed lack of requisite knowledge—that the checks were fraudulent—when he deposited the checks. This contention is contradicted by his allocution that he "did deposit [the Treasury check] knowing that it was fraudulent." Plea Hr'g at 74:4–5. *See also id.* at 72:25–73:17; 75:23–76:1. The culpable state of mind is further supported by other records. When employees at Chase confronted Kogan with the fraudulent nature of the checks, Kogan falsely attributed the fraudulent checks to someone that had "hacked" into his checking account and deposited the checks he did not authorize. This

6

explanation was direct contradiction to his admission that he was the one that deposited the checks. *Compare* ECF 66-1 at 2 *with* Plea Hr'g Tr. at 49:15–22. Moreover, Kogan deposited checks that had been physically altered to conceal the fact that they had been issued to other parties. *See* ECF 66-2; Plea Hr'g Tr. at 50:1–52:11. He also sent a hold harmless letter bearing a forged signature and a forged notary stamp, purporting to be sent by the payee named on the check. *See* ECF 66-4; Plea Hr'g Tr. at 23:3–24:25, 54:19–56:1. These records substantially outweigh any probative value of Kogan's belated denial of culpability. Also, his guilty plea greatly undermines a claim of actual innocence. *German v. Racette*, 2015 WL 7709606, at *6 (N.D.N.Y. Nov. 25, 2015); *Jenkins v. United States*, 2013 WL 6869649, at *3 (S.D.N.Y. 2013) ("[c]ourts are especially reluctant to overturn a conviction based on new evidence when the conviction stemmed from a guilty plea"). In view of overwhelming evidence of culpability, the Court determines that Kogan has failed to establish actual innocence.

Accordingly, he is not afforded the benefit of the actual innocent gateway. His petition is dismissed.

## CONCLUSION

For reasons provided above, the Court denies Kogan's habeas petition under Section 2255. The Court will not issue a Certificate of Appealability. Kogan has not "made a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). No "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk of Court is directed to terminate the petition and close the cases.

Dated: New York, New York
March 23, 2018

SO ORDERED

PAUL A. CROTTY
United States District Judge